## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| GARCIA GLENN WHITE, | § | No. 4:02-cv-01805 |
| *Petitioner*, | § | |
| | § | |
| *v.* | § | |
| | § | Capital Case |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal Justice, | § | **Execution Date Set for |
| Correctional Institutions Division, | § | October 1, 2024 ** |
| *Respondent*. | § | |

## EMERGENCY OPPOSED MOTION FOR SUBSTITUTION OF COUNSEL & MOTION FOR A STAY OF EXECUTION

MAUREEN FRANCO
Federal Public Defender
for the Western District of Texas

TIVON SCHARDL
Chief, Capital Habeas Unit
Texas Bar No. 24127495
Fed. Bar No. 3145499
*Attorney-in-Charge*

JOSHUA FREIMAN
DONNA COLTHARP
Assistant Federal Public Defenders
919 Congress Ave., Ste. 950
Austin, Texas 78701
737-207-3007 (tel.)
512-499-1584 (fax)

## TABLE OF CONTENTS

APPENDIX TABLE OF CONTENTS ............................................................. iii

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION ............................................................................... 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND .................................... 2

    A.   Patrick McCann represents White in his state and federal habeas proceedings. ............................................................................. 2

    B.   McCann did not raise an intellectual disability claim for White in any proceedings until his current execution date was set. ...................... 4

    C.   Changes in the medical and legal standards for intellectual disability occur following initial federal habeas proceedings. ................. 6

    D.   McCann raised White's intellectual disability claim for the first time after his recent execution date is set. ............................................. 9

ARGUMENT ..................................................................................... 11

I.   This Court Should Grant White's Motion for Substitution ............................. 11

    A.   This Court has the discretion to substitute counsel if doing so serves the interests of justice. ............................................................. 12

    B.   Current counsel is incapable of attacking his own conduct to argue for equitable tolling of any intellectual disability claim in federal court. ......................................................................................... 13

    C.   Other factors further support substitution. ...................................... 18

II.  The Court Should Grant White's Motion for a Stay of Execution. ................... 19

    A.   This Court has the power to stay Mr. White's execution pursuant to *McFarland v. Scott* and 28 U.S.C. § 2251(a)(3). ................................. 21

    B.   A stay is necessary to vindicate White's right to counsel under Section 3599. ........................................................................... 24

CONCLUSION.................................................................................. 27

APPENDIX: SUPPLEMENTAL HABEAS RULE 1 STATEMENT .......................... 28

# APPENDIX TABLE OF CONTENTS

| APPENDIX | DESCRIPTION |
|---|---|
| A | Declaration of Garcia "Glenn" White (Sept. 11, 2024) |
| B | Memorandum and Order, ECF No. 78, *Johnson v. Lumpkin*, No. 4:19-cv-03047 (S.D. Tex. Oct. 28, 2022) |
| C | Order Appointing Counsel Patrick F. McCann, *White v. State,* No. AP-72,580 (Tex. Crim. App. Jan. 19, 1998) |
| D | Opinion, *White v. State,* No. AP-72,580 (Tex. Crim. App. June 17, 1998) |
| E | Order, *Ex parte White*, No. 48,152-01 (Tex. Crim. App. Feb. 21, 2001) |
| F | Order, *Ex parte White*, No. 48,152-02 (Tex. Crim. App. April 24, 2002) |
| G | Application of Writ for Habeas Corpus, *Ex parte White*, No. 723847-D, WR-48,152-04 (Tex. Crim. App. Jan. 2, 2009) |
| H | Order, *Ex parte White*, No. WR-48,152-03 & WR-48,152-04 (Tex. Crim. App. May 6, 2009) |
| I | Motion Requesting Temporary Stay of Execution and Appointment of New State Habeas Counsel Under *Trevino v. Thaler*, *Ex parte White*, No. WR-48,152-05 (Tex. Crim. App. Jan. 13, 2015) |
| J | Order, *Ex parte White*, No. WR-48,152-05 (Tex. Crim. App. Jan. 15, 2015) |
| K | Defendant's Motion to Proceed Ex parte and File Motions and Orders Under Seal, *Ex parte White*, No. 723847, 180th District Court of Harris County (July 25, 2024) |
| L | Application of Writ for Habeas Corpus, *Ex parte White*, No. 723847-F, WR-48,152-09 (Tex. Crim. App. Aug. 23, 2024) |
| M | Aug. 28, 2024 letter from Garcia "Glenn" White to Richard Ellis |
| N | Order, *Gutierrez v. Davis*, No. 18-70028 (5th Cir. Sept. 10, 2018) |
| O | Order, *Gutierrez v. Davis*, No. 1:09-cv-22 (S.D. Tex. Aug. 22, 2018) |

| P | Order, ECF No. 84, *Johnson v. Davis*, No. 4:11-cv-02466 (S.D. Tex. Apr. 30, 2019) |
|---|---|
| Q | Postcard Denial (Without written order), *Ex parte White*, No. WR-48,152-05 (Tex. Crim. App. Jan 15, 2015) |
| R | Postcard Denial (Without written order), *Ex parte White*, No. WR-48,152-06 (Tex. Crim. App. Jan. 15, 2015). |
| S | Postcard Denial (Without written order), *Ex parte White*, No. WR-48,152-07 (Tex. Crim. App. Jan. 21, 2015) |
| T | Judgment of Conviction, *State of Texas v. White*, No. 723847 |
| U | Execution Order, June 25, 2024 (180th District Court, Harris County) |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkins v. Virginia*,
   536 U.S. 304 (2002) ................................................................*passim*

*Battaglia v. Stephens*,
   824 F.3d 470 (5th Cir. 2016) ...............................................*passim*

*In re Burton*,
   111 F.4th 664 (5th Cir. 2024) .......................................... 14, 15

*Christeson v. Roper*,
   574 U.S. 373 (2015) ................................................................*passim*

*Gutierrez v. Davis*,
   No. 1:09-cv-22 (S.D. Tex. Aug. 22, 2018) ............................ 22

*Gutierrez v. Davis*,
   No. 18-70028 (5th Cir. Sept. 10, 2018) ................................ 22

*Hall v. Florida*,
   572 U.S. 701 (2014) ................................................... 6, 7, 9, 19

*In re Hearn*,
   376 F.3d 447 (5th Cir. 2004) ........................... 19, 22, 23, 24

*Holland v. Florida*,
   560 U.S. 631 (2010) .............................................................. 15

*In re Johnson*,
   935 F.3d 284 (5th Cir. 2019) ............................................ 6, 15

*Maples v. Thomas*,
   565 U.S. 266 (2012) .............................................................. 18

*Martel v. Clair*,
   565 U.S. 648 (2012) ............................................... 11, 12, 13

*McFarland v. Scott*,
   512 U.S. 849 (1994) ................................................................*passim*

*Moore v. Texas*,
   581 U.S. 1 (2017) (*Moore I*) ................................................. 7

*Moore v. Texas,*
   586 U.S. 133 (2019) (*Moore II*) ................................................................. 7

*Ex parte Moore,*
   470 S.W.3d 481 (Tex. Crim. App. 2015) ................................................... 7

*Ex parte Moore,*
   548 S.W.3d 552 (Tex. Crim. App. 2018) ................................................... 7

*Nken v. Holder,*
   556 U.S. 418 (2009) ................................................................................. 24

*Panetti v. Stephens,*
   586 F. App'x 163 (5th Cir. 2014) ............................................................ 23

*Ramirez v. Davis,*
   675 F. App'x 478 (5th Cir. 2017) ............................................................ 23

*Ruiz v. Quarterman,*
   504 F.3d 523 (5th Cir. 2007) ................................................................... 23

*Speer v. Stephens,*
   781 F.3d 784 (5th Cir. 2015) ..................................................................... 8

*Trevino v. Thaler,*
   569 U.S. 413 (2013) ................................................................................... 8

**Statutes**

18 U.S.C. § 3599 ............................................................................... *passim*

18 U.S.C. § 3599(a)(1) .............................................................................. 1

18 U.S.C. § 3599(e) ................................................................... 1, 12, 13, 22

21 U.S.C.§ 848(q) ............................................................................... 3, 21

28 U.S.C. § 1292 ....................................................................................... 2

28 U.S.C. § 2244 ..................................................................................... 14

28 U.S.C. § 2244(b)(2)(A) ............................................................... 9, 14, 26

28 U.S.C. § 2244(d) ................................................................................ 26

28 U.S.C. § 2244(d)(1) ................................................................... 12, 13, 14

28 U.S.C. § 2244(d)(2) ............................................................................ 14

28 U.S.C. § 2251 .................................................................................. 21, 24

28 U.S.C. § 2251(a)(3) ...................................................................... *passim*

Tex. Code Crim. Proc. art. 11.071, § 5(a)(1) ............................................ 26

Tex. Code Crim. Proc. art. 11.073 ............................................................. 9

## Other Authorities

Appointment and Performance of Defense Counsel in Death Penalty
    Cases 4.1, comment, reprinted in 31 Hofstra L. Rev. 913 (2003). ....................... 26

## INTRODUCTION

Petitioner Garcia Glenn White is scheduled to be executed by the State of Texas on October 1, 2024. In the last week, undersigned counsel were contacted by Mr. White and discovered that White's appointed counsel, Patrick F. McCann, has an unavoidable conflict of interest that prevents him from fulfilling his statutory duties of representation under 18 U.S.C. § 3599. Declaration of Garcia Glenn White, Sept. 11, 2024 (Appendix A). White has a clear right to conflict-free representation under 18 U.S.C. §§ 3599(a)(1) & (e) and *Christeson v. Roper*, 574 U.S. 373 (2015).

McCann's representation is impaired because White has a strong potential claim of intellectual disability that may be entertained by this Court, but McCann cannot effectively raise it. Under the controlling interpretation of the statute of limitations, raising White's ineligibility for execution would require McCann to assert his own dilatory conduct as grounds for equitable tolling. *Christeson* recognized that an attorney who must assert his own misconduct has a disabling conflict. 574 U.S. at 379.

Just as White's substantive claim has merit, his procedural claim for equitable tolling would prevail if he had conflict-free counsel to assert it. In fact, another court in this district has already held that McCann's egregious conduct warranted equitable tolling in a strikingly similar case. Memorandum and Order at *20-31, ECF No. 78, *Johnson v. Lumpkin*, No. 4:19-cv-03047 (S.D. Tex. Oct. 28, 2022) (Bennett, J.)

1

(Appendix B).[1] There, the court found McCann purposely delayed developing and raising an intellectual-disability claim on his client's behalf until his client faced an imminent execution date long after the statute of limitations had passed. The court would reach the same conclusion in White's case.

Based on that precedent, as well as 28 U.S.C. § 2251(a)(3) and *McFarland v. Scott*, 512 U.S. 849 (1994), White requests that this Court replace his current § 3599 counsel with conflict-free counsel Maureen Franco, Federal Public Defender for the Western District of Texas, through her designee, the undersigned chief of the Capital Habeas Unit, and enter a stay of execution to permit conflict-free counsel the opportunity to investigate and raise potential claims for relief.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND[2]

White was convicted of capital murder and sentenced to death by a Harris County jury in 1996 for the murders of Bernette and Annette Edwards.

### A.   Patrick McCann represents White in his state and federal habeas proceedings.

In January 1998, the Texas Court of Criminal Appeals (CCA) appointed Patrick McCann to represent White in his initial state habeas proceedings. Appendix C. The CCA affirmed White's conviction and sentence on direct review in June 1998. *White v. State,* No. AP-72,580 (Tex. Crim. App. June 17, 1998) (Appendix D).

---

[1] An appeal of a certified issue under 28 U.S.C. § 1292 unrelated to equitable tolling is pending. *Johnson v. Lumpkin*, No. 23-70002 (5th Cir.) (oral argument scheduled Nov. 6, 2024).

[2] The statement under Local Rules, Supplemental Habeas Rule 1 is appended to this document.

With McCann as his counsel, White filed an initial state habeas application, raising eight claims for relief. The trial court entered findings of fact and conclusions of law recommending that White be denied relief, and the CCA adopted the trial court's findings and conclusions in February 2001. *Ex parte White,* No. 48,152-01 (Tex. Crim. App. Feb. 21, 2001) (Appendix E).

In April 2001, McCann was appointed as White's counsel in federal habeas proceedings under 21 U.S.C. § 848(q).[3] ECF No. 3. The Court later appointed Rosa Eliades as co-counsel. ECF No. 10. McCann has appeared as counsel on all state and federal pleadings since his federal appointment in 2001.[4]

White filed a first federal habeas petition but voluntarily dismissed it in order to file a subsequent state habeas application. The CCA dismissed that application as an abuse of the writ in April 2002. *Ex parte White,* No. 48,152-02 (Tex. Crim. App. April 24, 2002) (Appendix F). White filed a new initial federal habeas petition on May 3, 2002, ECF No. 27, but again received a stay of the federal case and returned to state court in 2003 pending the outcome of DNA testing of physical evidence in the case.[5]

---

[3] Recodified later as 18 U.S.C. 3599 (2006 ed. and Supp. IV).

[4] Eliades appears only on state and federal pleadings up to 2014. Although Eliades remains listed as co-counsel in this case, it appears that beginning in fall 2015, Eliades ceased to maintain her private practice in Texas and began "working with the Military Commissions Defense Organization representing accused before the Military Commissions in Guantanamo Bay Cuba." Rosa Eliades, LinkedIn, https://www.linkedin.com/in/rosa-eliades-9275613/ (accessed September 13, 2024).

[5] The retesting was precipitated by an independent audit which uncovered extensive problems with the Houston Police Department Crime Lab Serology and DNA Section.

**B.    McCann did not raise an intellectual disability claim for White in any proceedings until his current execution date was set.**

In June 2002, the Supreme Court held that the Eighth Amendment prohibited the execution of persons with intellectual disability (then termed "mental retardation"). *Atkins v. Virginia*, 536 U.S. 304 (2002). At the time, the clinical definition of intellectual disability required finding (1) the person had subaverage intellectual functioning, (2) significant limitations in adaptive skills such as communication, self-care, and self-direction, and (3) the onset of those features before age 18. *Id.* at 318.

McCann did not raise an *Atkins* claim in in 2007 in the first state habeas application he filed on White's behalf that followed *Atkins*. While that application remained pending before the CCA, however, McCann filed, in 2009, another subsequent habeas application on White's behalf that did mention the emerging constitutional issue of intellectual disability but did not assert a claim directly under *Atkins*. Instead, it alleged that White's trial counsel were ineffective for failing to develop and raise evidence of White's "borderline" mental retardation and argued that the constitution was violated because White's "borderline" disability would have altered the jury's sentencing calculus. 2009 State Habeas Application at 3-5 (Appendix G).

These claims relied on the 2008 report of Dr. Patricia Averill, Ph.D., who, in July 2008, administered a Wechsler Adult Intelligence Scale, Third Edition (WAIS-III). Dr. Averill reported that White obtained a full-scale IQ score of 78. App. G at 11-16. Based on the diagnostic criteria at the time, Dr. Averill concluded White's IQ score made him "ineligible" to be diagnosed as a person with intellectual disability. App. G at 15; *see Atkins*, 536 U.S. at 309 n.5 ("an IQ between 70 and 75 or lower … is typically

4

considered the cutoff IQ score for the intellectual function prong of the mental retar-dation definition" (citation omitted)).

Dr. Averill also noted a total lack of information on which to base an assess-ment of the second prong of intellectual disability—adaptive functioning. She re-ported that McCann provided "no information," and had to rely exclusively on White's self-report. App. G at 15. As a result, Dr. Averill found it "difficult to ascertain" whether White had significant deficits in his adaptive behaviors. *Id.*

Nevertheless, Dr. Averill's report contained several other signs of low intelli-gence. As to intellectual functioning, White received low achievement scores on the Wide Range Achievement Test—Revision 4 (WRAT4). As to sources of impairment and adaptive functioning, White's self-report included a history of marijuana and crack cocaine abuse, an adolescent head injury resulting from being hit with a base-ball bat, an inability to handle money and other personal needs, and poor perfor-mance in school. App. G at 13.

The CCA dismissed White's 2007 and 2009 applications as abuses of the writ. *Ex parte White,* Nos. WR-48,152-03, WR-48,152-04, 2009 WL 1272551 (Tex. Crim. App. May 6, 2009) (per curiam) (Appendix H).

Upon returning from state court, White amended his federal petition for the last time in December 2009. ECF No. 64. In September 2011, this Court denied White's petition. Memorandum Opinion and Order, Sept. 30, 2011, ECF No. 81. The Fifth Circuit denied certification of an appeal on any issue. *White v. Thaler*, 522 F.

App'x 226, 227-28 (5th Cir. 2013), *as revised* (Apr. 3, 2013), *cert. denied sub nom.*

*White v. Stephens*, 571 U.S. 1133 (Jan. 13, 2014).

### C. Changes in the medical and legal standards for intellectual disability occur following initial federal habeas proceedings.

Following the conclusion of Mr. White's initial federal habeas proceedings, the

law and science underlying intellectual disability have undergone major changes.[6]

The American Psychiatric Association's (APA) Diagnostic and Statistical Manual of Mental Disorders-IV in effect when White filed his initial federal habeas petition did not classify him as intellectually disabled because his IQ was higher than 70, a shorthand for a score representing a range from 65 to 75 IQ points. In 2013, the APA released DSM-V, and it significantly changed the guidelines for a diagnosis of intellectual disability, moving "the focus from specific IQ scores to clinical judgment" and recognizing that an individual with an IQ score over 70 may still qualify as intellectually disabled. *In re Johnson*, 935 F.3d 284, 293 (5th Cir. 2019), *as revised* (Aug. 15, 2019).

Shortly after the publication of the DSM-V, the Supreme Court decided *Hall v. Florida*, 572 U.S. 701 (2014), explicitly holding that an *Atkins* determination must be "informed by the medical community's diagnostic framework." 572 U.S. at 721. The DSM-V repudiated previous over-reliance on IQ test scores and recognized that "[i]ntellectual disability is a condition, not a number." *Id.* at 722-23.

---

[6] This history of *Atkins* developments is drawn from the district court's 2022 equitable tolling order in *Johnson*. App. B at 5-6.

Although the 2014 *Hall* decision aligned assessments of intellectual disability for purposes of *Atkins* with the methods and criteria used in the medical community, Texas courts did not follow suit. They continued to apply judge-made, nonclinical factors when assessing intellectual disability for the purpose of habeas relief. *See Ex parte Moore*, 470 S.W.3d 481, 486 (Tex. Crim. App. 2015) (refusing to adopt a recommendation that habeas relief be granted when the lower court relied on the DSM-V).

During this time, White's attorney was on the frontline of reform of Texas's law regarding intellectual disability. As counsel for Bobby James Moore, McCann fought to bring Texas courts into compliance with new diagnostic standards. App. B at 26-28. In 2017, the Supreme Court used Moore's case to set the Texas state courts on the correct legal path, remanding the case to the CCA with instructions to apply current medical standards in assessing intellectual disability. *Moore v. Texas*, 581 U.S. 1, 20 (2017) (*Moore I*).

On remand, the CCA finally "conclude[d] that the DSM-5 should control [its] approach to resolving the issue of intellectual disability." *Ex parte Moore*, 548 S.W.3d 552, 560 (Tex. Crim. App. 2018). Even so, the CCA replaced its recently condemned *"Briseno* factors" with other non-scientific factors. That error required another intervention by the Supreme Court. In *Moore v. Texas*, 586 U.S. 133 (2019) (*Moore II*), the Court again corrected the CCA's failure to comply with the mental-health profession's standards.

When the DSM-V issued, White's motion for a certificate of appealability had just been denied by the Fifth Circuit.[7] As the court found in *Johnson*, McCann, who was Moore's attorney, "McCann knew about the DSM-V and knew it could change the way mental-health professionals evaluated" clients for intellectual disability. App. B at 6. But court records—including McCann's most recent pleading on White's behalf, filed only weeks ago—indicate that, before *Moore I* was decided, McCann did not act to have White evaluated under the new diagnostic criteria, did not investigate or direct an investigation into White's adaptive functioning, or raise a claim under *Atkins*.

On April 28, 2014, the 180th state district court issued an order setting White's execution date for January 28, 2015. Just two weeks before that execution date, McCann filed a motion asking the CCA to stay the execution and appoint outside counsel to review his own habeas work in light of *Trevino v. Thaler*, 569 U.S. 413 (2013).[8] In that motion, McCann stated, "I have represented Mr. White for too long to objectively assess whether or not I made mistakes along the way that could have cost him a chance at relief." He requested that White "have the benefit of at least one last set of objective eyes to judge the work done by me." Motion Requesting Stay of Execution, Jan. 13, 2015 (Tex. Crim. App.) (Appendix I). The CCA denied McCann's motion.

---

[7] The DSM-V was published on May 18, 2013. The Fifth Circuit denied White's motion for a certification of appealability on April 1, 2013.

[8] The nature of the conflict in state court is not apparent. It does not appear that McCann notified the federal court of his potential conflict. *Cf. Speer v. Stephens,* 781 F.3d 784, 785-86 (5th Cir. 2015) (appointing supplemental conflict-free counsel when appointed lawyer, who represented petitioner during his state habeas proceedings, notified court of potential conflict in federal proceedings).

McCann also moved for authorization to file a successive federal habeas appli-
cation. The motion raised whether White's invocation of his right to counsel at the
time that he custodial inculpatory statements should be afforded more deference due
to his "limited intellectual capacity." The Fifth Circuit held that White's request did
not satisfy 28 U.S.C. § 2244(b)(2)(A), noting, "White does not raise an Eighth Amend-
ment claim and he does not contend that he is intellectually disabled within the
meaning of *Atkins* and *Hall*." *In re White*, 602 F. App'x 954, 958 (5th Cir. 2015) (un-
published).

On January 20, 2015, McCann filed on White's behalf another subsequent ha-
beas application in state court. This application asserted that White was entitled to
relief under Texas Code of Criminal Procedure Article 11.073 because new scientific
evidence would result in him receiving a sentence less than death. White was granted
a stay of execution on this issue, which was later dismissed when the CCA decided
the state law did not apply to claims affecting only sentences, not convictions. *Ex
parte White*, 506 S.W.3d 39 (Tex. Crim. App. 2016) (Appendix J).

**D.     McCann raised White's intellectual disability claim for the
first time after his recent execution date is set.**

On June 25, 2024, the 180th state district court set White's execution for Oc-
tober 1, 2024. One month later, McCann made what appears to be his first request
for funding to hire an expert to assess White's functioning since the changes in the
medico-legal criteria for intellectual disability. Motion to Proceed Ex Parte and File
Motions and Orders Under Seal, July 25, 2024 (Appendix K). On August 23, McCann
filed on White's behalf another successive state habeas application in which he raised

9

an *Atkins* claim for the first time. Sixth Subsequent Application for Writ of Habeas Corpus, *Ex parte White*, WR-48,152-09 (Tex. Crim. App. 2024) (filed Aug. 23, 2024) (Appendix L).

McCann supported White's *Atkins* claim with an affidavit prepared by Dr. Greg Hupp, Ph.D., a neuropsychologist. App. L at 33-38. (It appears that McCann did not have White reevaluated under the current diagnostic standards or using an up-to-date testing instrument.) Dr. Hupp reviewed the testing by Dr. Averill in 2008 and new information concerning White's adaptive functioning. He determined that the IQ score of 78 reported by Dr. Averill "was likely an over-estimation of [White's] true intellectual abilities" caused by the combination of "[t]he structural limitations of IQ tests, floor effects, discrepancies between IQ and adaptive functioning, and the influence of outdated norms due to both the Flynn Effect and an outdated edition of the intelligence test[.]"[9] App. L at 37. Taking these factors into account, Dr. Hupp posited that White's true IQ score would be closer to 68. *Id.* Dr. Hupp concluded White would meet the criteria for diagnosis as a person with intellectual disability. *Id.* The State has not controverted this diagnosis with an expert opinion of its own. The application remains pending before the CCA under case number WR-48,152-09.

---

[9] In his affidavit, Dr. Hupp noted that at the time Dr. Averill administered the WAIS-III to White, "an updated edition of that intelligence test was being released on the market[.]" App. L at 36.

## ARGUMENT

### I.    This Court Should Grant White's Motion for Substitution.

Mr. White is entitled to substitution of conflict-free counsel if he demonstrates that the substitution is in the interests of justice. *Martel v. Clair*, 565 U.S. 648, 659-60 (2012). That standard is satisfied when the habeas petitioner makes a timely showing that his counsel is burdened by a conflict of interest. *Christeson*, 574 U.S. at 377. Such a conflict exists where a capital habeas petitioner may be able to plead a valid claim for relief and his current counsel would have to assert that the failure to plead the claim earlier was caused by counsel's lack of diligence or some greater fault. *Id.* at 379. White readily satisfies these criteria.

On White's request, the Federal Public Defender for the Western District of Texas asks this Court to appoint her Capital Habeas Unit to this case so that they may conduct an independent review of the conflict-burdened representation of White, including whether White has intellectual disability that makes him ineligible for execution and whether White has grounds to raise such a claim in federal court. A preliminary review of White's record by undersigned counsel shows numerous signs that, under the current medical and legal standards, White would meet the current criteria for a diagnosis of Intellectual Disability Disorder. For that reason, the interests of justice weigh in favor of appointing supplemental counsel to determine whether McCann's failure to raise an ID claim for his client provides a basis for arguing that this Court may consider White's apparent disability.

### A.    This Court has the discretion to substitute counsel if doing so serves the interests of justice.

Title 18 U.S.C. § 3599 grants death-sentenced petitioners like White the right to the assistance of conflict-free counsel "throughout every … stage of available judicial proceedings … including all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures." 18 U.S.C. § 3599(e); *see Clair*, 565 U.S. at 659-60.

Although an attorney's appointment continues until the case is resolved or a court has excused them, they may be "replaced by similarly qualified counsel," either at the request of counsel or the defendant. § 3599(e); *see Clair*, 565 U.S. at 657; *Christeson*, 574 U.S. at 377. A court should grant a motion to replace counsel when replacement is "in the interest of justice." *Clair*, 565 U.S. at 662. This standard is "context specific." *Clair*, 565 U.S. at 663. Courts reviewing substitution decisions examine a number of factors. Among them are the timeliness of the motion and the asserted cause for the request, including the extent to which any conflict or breakdown is the client's responsibility. *Id.*

*Clair* makes clear that a conflict of interest may be grounds for substitution. *See Christeson*, 574 U.S. at 379. Indeed, in *Christeson*, the Court applied *Clair* to a conflict and concluded that the very problem McCann labors under is, in fact, a conflict requiring substitution. There, as is the case here, original counsel failed to file a petition for habeas review within the strict one-year statute of limitations. *Id.* at 375; *see* 28 U.S.C. § 2244(d)(1). When, seven years later, the attorneys sought advice about the case, they realized that they could not file a motion arguing that the limitations

period should have been equitably tolled, because that motion would be premised on their own deficient performance. *Id.* Outside counsel then filed a motion for substitution under § 3599—the request was denied, and the United States Court of Appeals for the Eighth Circuit dismissed the appeal for lack of jurisdiction, based on its view that new counsel had no authority to file an appeal for Christeson.

The Supreme Court reversed. It held that Christeson's § 3599 counsel had a disabling conflict because their client's interests demanded that they raise their own ineffectiveness. *Id.* at 379-80. This is so, the Court held, even if counsel cannot be said to have wholly "abandoned" their client. *Id.* Indeed "the specific substitution-of-counsel clause contained in § 3599(e) … must contemplate the granting of such motions in circumstances beyond those where a petitioner effectively 'has no counsel at all'—as is the case when counsel is conflicted." *Id.* at 379.

### B. Current counsel is incapable of attacking his own conduct to argue for equitable tolling of any intellectual disability claim in federal court.

McCann is unable to continue as White's § 3599 counsel because he has the same disabling conflict as the attorneys in *Christeson*.

Because White has a strong claim of intellectual disability, and vehicles by which to raise that claim, White can satisfy the low bar for authorizing substitution of counsel to further investigate the potential ID claim, and others unconflicted counsel may identify. *See Martel*, 565 U.S. at 666 (recognizing right to attorney unless appointment would be "futile"); *Christeson*, 574 U.S. at 380-81.

The most recent subsequent writ application that McCann filed on White's behalf in 2024 demonstrates that White has at least a prima facie claim under *Atkins*.

Dr. Hupp's report corrects White's reported IQ score, showing that it is well within the range of the first prong of the assessment, and he also finds evidence of deficits in adaptive functioning during White's developmental period. App. L at 34, 37. McCann could have filed that application after barriers to pleading an *Atkins* claim were removed. 28 U.S.C. § 2244(d)(2). But he didn't.

That was a violation of McCann's duties of competence, loyalty, and diligence. The Fifth Circuit has long recognized the power to deny authorization based on its view that the statute of limitations will bar the asserted *Atkins* claim. *In re Burton*, 111 F.4th 664, 667 (5th Cir. 2024) (citing, for longstanding rule, *In re Lewis*, 484 F.3d 793, 796-97 (5th Cir. 2007)). McCann should have understood the peril he placed his client in by failing to raise the claim within a year of when it became available. 28 U.S.C. § 2244(d)(1).

Although McCann seems to have breached his fiduciary duties to White—or, *because* he may have breached those duties—the law provides White the means for pursuing his substantial *Atkins* claim in federal court. With the assistance of conflict-free counsel, White may request authorization to file a subsequent petition under 28 U.S.C. § 2244. White can show that his claim relies on *Atkins* (a "new rule" made retroactive to cases on collateral review) which was not "previously available" to him at the time of his last habeas application. 28 U.S.C. § 2244(b)(2)(A). Because "availability" depends on "changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*," and because White was previously barred from ID diagnosis by an IQ cut-off that has since been abolished, White

might be able to satisfy the gatekeeping standard for authorization to file a successive petition. *In re Johnson*, 935 F.3d 284, 294 (5th Cir. 2019), as revised (Aug. 15, 2019) (authorizing successive petition based on prima facie showing that *Atkins* claim was "previously unavailable"); App. B at 12-18 (finding claim "previously unavailable").

As to any federal *Atkins* claim White raises at this late date, the State is likely to argue—and a court may find—that White's claim has been filed more than a year from the date his claim became available—which could be no later than 2019, when the Supreme Court decided *Moore II. See In re Burton*, 111 F.4th 664, 666 (5th Cir. 2024) (noting that petitioner had filed more than a year from decisions in *Moore I* (2018) and *Moore II* (2019), assuming *arguendo* those decisions made the claim legally available).

To overcome the limitations bar, White will need to provide reasons for equitable tolling. White's best—and perhaps only—basis for tolling is McCann's failure to raise White's intellectual disability within a year of it becoming available under current medical and legal standards. *See Holland v. Florida*, 560 U.S. 631, 651 (2010) ("[A]t least sometimes, professional misconduct … could … amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling.").

Again, *Christeson* compels substitution of counsel for White. In that case, when counsel appointed under § 3599 failed to file a timely habeas petition under the statute of limitations, the Court found that the "only hope for securing review of the merits of his habeas claims" was a motion under Rule 60(b), arguing that the statute should be equitably tolled on account of his attorneys' malfeasance. 574 U.S. at 375.

15

Although Christeson "face[d] a host of procedural obstacles," including that he would need to show "timeliness" and "extraordinary circumstances," the Court held that "he should have that opportunity, and [was] entitled to the assistance of substitute counsel in doing so." *Id.* at 380.

Preliminary review reveals striking parallels between this case and McCann's representation in Dexter Johnson's case. In a hearing regarding his conduct in *Johnson,* McCann testified that he was aware of legal and scientific advances in the diagnosis of intellectual disability that made it necessary to investigate intellectual disability in light of changed standards. App. B at 6. Yet, critically, the district court found that McCann began investigating the merit of Johnson's claim only after a state court had set an execution date. App. B at 7. Similarly, in this case, McCann appears to have moved late to retain the same expert neuropsychologist he used in Dexter Johnson, Dr. Greg Hupp—waiting over a month after the trial court set the execution date and just over two months before the execution date. *See* App. B at 7; App. L at 10; App. K at 1. Dr. Hupp signed his affidavit on August 11, just two weeks after McCann had sought funding for an expert. App. L at 33; App. K at 1. All of the affidavits pleaded in support of White's intellectual-disability claim were executed in a two-day period August. App. L at 60-78.[10]

---

[10] Although the last IQ test given White was in 2009, and although Dr. Hupp believed that, properly evaluated under current norms, White's correct score would likely be 68, McCann did not ask Dr. Hupp to retest White. *See* 2024 Application at 33.

In fact, McCann's conduct in this case is more alarming than his conduct in *Johnson*. Judge Bennett's order finding conflict-producing fault with his tactics and appointing new counsel was issued in October 2022—almost two years ago. Nonetheless, McCann has apparently employed the same tactics—tactics that have put a legitimate claim of ID outside the purview of the federal courts—two years after being found at fault in *Johnson*. McCann has not informed White about the result in *Johnson* or given him the opportunity to say whether he wished McCann to continue representing him under these circumstances. App. A (White Decl.) ¶ 7.

Further investigation by conflict-free counsel will be necessary to explore these facts and identify other possible issues regarding McCann's representation of White. In addition to the grounds identified by Judge Bennett in Johnson's case, conflict-free counsel must investigate whether McCann violated any fiduciary duty to his client, severing his attorney-client relationship. But these similarities at least point to the real possibility of overcoming the limitations bar based on McCann's conduct, which is more than White needs to show to secure appointment and a stay. It is far from "plain that any subsequent motion that substitute counsel might file on [White's] behalf would be futile." *Christeson*, 574 U.S. at 380.

It would be untenable to leave McCann as counsel to raise arguments about his own error. As counsel himself has said in his 2015 motion confessing a different potential conflict, "no man or lawyer is perfect, nor can any lawyer truthfully say that they are their own best judge." App. I. Exploring and advancing the ID claim would require McCann "to denigrate [his] own performance. Counsel cannot reasonably be

expected to make such an argument, which threatens their professional reputation and livelihood." *Christenson*, 574 U.S. at 378 (citing Restatement (Third) of Law Governing Lawyers § 125 (1998)).

To the extent Rosa Eliades remained White's counsel and acted as one, the foregoing would apply equally to her. If, instead, Ms. Eliades ceased to act on White's behalf without informing White or the Court, her conduct would appear to amount to abandonment as recognized by the Supreme Court in *Maples v. Thomas,* 565 U.S. 266, 281-82 (2012), and would also justify substitution.

## C.    Other factors further support substitution.

Other relevant factors support this substitution request.

First, undersigned counsel have not delayed seeking appointment. *See Christenson*, 574 U.S. at 381 (delay "might be" valid consideration in many cases). In late August, White wrote a letter to attorney Richard Ellis seeking help on his case and raising concerns about McCann. *See* August 28, 2024 letter from Garcia "Glenn" White to Richard Ellis (Appendix M). Ellis contacted counsel with the Texas Habeas Assistance and Training project, which assists federal courts with recruitment of counsel in capital cases, who contacted the Federal Public Defender office on September 5. When White indicated he wished to consult with FPD attorneys, they visited him on September 11 to explain their view that McCann may have a conflict. *See generally* App. A. Two days later, they filed this motion. Given the need for counsel to conduct at least a preliminary review of the case, to ensure White was seeking a second opinion, and to consult regarding complex issues with someone who is intellectually challenged, the motion is timely filed.

Upon consulting with attorneys from the FPD, White confirmed his desire for new counsel. App. A. When FPD attorneys consulted with White, they informed him of the 2022 Dexter Johnson order (App. B) and its similarities to his case. *Id.* ¶¶ 5-7. They indicated that their very preliminary review of his case indicates that McCann is conflicted from reviewing his own conduct here and that new counsel are needed to conduct a proper review and, if warranted, raise a claim of intellectual disability for him. *Id.* ¶¶ 3-4. White has asked that the FPD represent him in these matters. *Id.* ¶ 8.

Finally, the public interest requires a conflict-free investigation of White's intellectual disability. The Supreme Court has recognized that "[n]o legitimate penological purpose is served by executing a person with intellectual disability." *Hall*, 772 U.S. at 708. The public interest in ensuring that the death penalty is meted out constitutionally lies with allowing substitution—and a stay of execution—to permit consideration of whether White is a person with intellectual disability.

## II.    The Court Should Grant White's Motion for a Stay of Execution.

This Court has broad discretion to stay White's execution to give meaning to the appointment of conflict-free counsel. "[T]he pre-application appointment of counsel alone, without the time to adequately develop the facts and brief the claims, renders the statutory guarantee of counsel an empty promise." *In re Hearn*, 376 F.3d 447, 457 (5th Cir.), *decision clarified on denial of reh'g,* 389 F.3d 122 (5th Cir. 2004). In cases where an execution date is set, Congress has made clear—and cases from the Supreme Court and Fifth Circuit illustrate—that the right to meaningful assistance of independent counsel is so weighty that it trumps the State's interest in

speedy execution. *See* 28 U.S.C. § 2251(a)(3); *McFarland v. Scott*, 512 U.S. 849 (1994); *Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016).

The facts of this case strongly warrant the exercise of that discretion to stay White's execution. Through no fault of his own, White's case has never been reviewed by a federal court to determine whether he is a person with an intellectual disability. He needs new counsel to investigate his substantial claim and research procedural avenues to raise that claim—and possibly others—less than a month before his execution. Even though conflicted counsel McCann has already filed an application raising White's intellectual disability in state court, conflict-free counsel may not simply rely on that claim as pleaded. Conflict-free counsel have a statutory and ethical duty to "meaningfully research," *McFarland*, 512 U.S. at 857, and "investigate the factual bases" for relief in federal court, *Battaglia*, 824 F.3d at 472—in addition to researching and investigating other potential claims. They must further develop evidence on the suspicion that counsel's conflict of interest "stunted the evidence developed thus far" in support of that claim. *Battaglia*, 824 F.3d at 475. Finally, they must investigate McCann's conduct which gives rise to his conflict and is the ostensible cause for petitioner's delay in raising his intellectual-disability claim. *See Christeson*, 574 U.S. at 380-81. Execution of a man who is constitutionally prohibited to be executed would serve no public interest. Moreover, since learning of White's predicament, conflict-free counsel have acted swiftly to seek a stay.

**A.     This Court has the power to stay Mr. White's execution pursuant to *McFarland v. Scott* and 28 U.S.C. § 2251(a)(3).**

White has a statutory right to counsel under 18 U.S.C. § 3599, which requires appointment of new counsel, as described in Part I. "[O]nce a capital defendant invokes his § 3599 right, a federal court also has jurisdiction under [28 U.S.C.] § 2251 to enter a stay of execution to make the defendant's § 3599 right effective." *Battaglia*, 824 F.3d at 475 (internal citation and quotation omitted).

In *McFarland*, the Supreme Court held that a stay of execution was warranted to give effect to a petitioner's right to the assistance of counsel, even where the petitioner had no pending proceeding raising a constitutional claim. *Id.* at 857. The Court reasoned that Congress had provided a right to counsel because capital litigation is "unique and complex," but even more so because of "the seriousness of the possible penalty." *Id.* at 855 (discussing 21 U.S.C. § 848(q), which was recodified as 18 U.S.C. § 3599). The Court concluded that this right would be "meaningless" if a petitioner were executed despite the appointment of counsel to perform their duties. *Id.* at 857. "[T]he right to counsel necessarily includes a right for that counsel to meaningfully research and present a defendant's habeas claims." *Id.* at 858. Where this opportunity is not afforded, '[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper.'" *Id.* (quoting *Barefoot v. Estelle*, 463 U.S. 880, 889 (1983)) (alterations in original).

In 2006, Congress enacted a new statutory authority for issuing stays pursuant to appointment of new counsel, 28 U.S.C. § 2251(a)(3). Section 2251(a)(3) provides:

> If a State prisoner sentenced to death applies for appointment of
> counsel pursuant to section 3599(a)(2) of title 18 in a court that
> would have jurisdiction to entertain a habeas corpus application
> regarding that sentence, that court may stay execution of the sen-
> tence of death, but such stay shall terminate not later than 90 days
> after counsel is appointed or the application for appointment of
> counsel is withdrawn or denied.

As the Fifth Circuit recognized in upholding a stay under § 2251(a)(3), "[i]f a court

exercises its discretion to grant a stay at the time of appointing counsel, a 90-day stay

serves the purpose of allowing counsel time to determine if an application for habeas

corpus relief is appropriate." *Gutierrez v. Davis*, No. 18-70028 (5th Cir. Sept. 10, 2018)

(unpublished) *denying motion to vacate stay, Gutierrez v. Davis*, No. 1:09-cv-22 (S.D.

Tex. Aug. 22, 2018) (issuing stay a week after appointing § 3599 counsel and less than

one month before execution date).[11]

    The Fifth Circuit has repeatedly recognized the authority to stay an execution

under *McFarland* and § 2251(a)(3). Critically, it has upheld or issued stays even when

initial habeas proceedings have concluded and the likeliest "available post-conviction

process" under 18 U.S.C. § 3599(e), is successive litigation. *See In re Hearn*, 376 F.3d

at 457-58 (applying *McFarland* and granting a stay of execution where counsel aban-

doned petitioner and new counsel was appointed to develop facts and prepare appli-

cation to file federal successor petition raising *Atkins*); *Battaglia*, 824 F.3d at 475

(reversing denial of motion for appointment of § 3599 counsel and issuing stay of ex-

ecution); *Gutierrez v. Davis*, No. 18-70028 (5th Cir. Sept. 10, 2018) (App. N). *See also*

---

[11] Fifth Circuit order and district court opinion are attached as Appendix N &
O respectively.

22

*Ruiz v. Quarterman*, 504 F.3d 523, 524 (5th Cir. 2007) (granting stay of execution on motion for relief from judgment); *Panetti v. Stephens*, 586 F. App'x 163, 164 (5th Cir. 2014) (issuing stay to consider district court's denial of motion for § 3599 counsel); *Ramirez v. Davis*, 675 F. App'x 478, 479 (5th Cir. 2017), *affirming stay*, *Ramirez v. Davis*, No. 12-cv-410 (S.D. Tex. Jan. 31, 2017) (ECF No. 48).

It is also notable that the Fifth Circuit has upheld or granted stays of execution when a scheduled execution was imminent. In *Hearn*, the petitioner sought appointment *the day before* his execution and received a temporary stay from the Fifth Circuit until it could thoroughly address the case, after which it concluded that he was entitled to a *McFarland* stay. 376 F.3d at 450. Battaglia filed his appointment motion 20 days before his scheduled execution, seeking counsel to investigate the possibility of a *Ford* claim that he was incompetent to be executed. *Id.* Gutierrez received new § 3599 counsel just thirty-eight days before his execution date. App. O at *2.

Finally, it is significant that the district court granted a stay under § 2251(a)(3) in Dexter Johnson's case in 2019 which allowed new counsel to raise Johnson's intellectual disability claim in a successive petition and investigate McCann's representation in support of arguing equitable tolling. Order, ECF No. 84, *Johnson v. Davis*, No. 4:11-cv-02466 (S.D. Tex. Apr. 30, 2019) (Appendix P). There, Johnson received new supplemental counsel to investigate whether McCann had a conflict. App. P at 3-4. Supplemental counsel concluded that McCann had violated his ethical and professional duties which prevented him from raising numerous meritorious claims including intellectual disability, and moved to terminate him. *Id.* 4-5. Supplemental counsel

then sought a stay of execution, *id.* at 5, which the court granted, *id.* at 6. (No appeal was taken from the stay order.)

In *Battaglia*, the court found that counsel had abandoned the client for challenging his competency to be executed—a similar context to a conflict of interest—and he was entitled to new counsel. 824 F.3d at 471. Addressing Battaglia's motion for a stay of execution, the Fifth Circuit noted, "[O]nce a capital defendant invokes his § 3599 right, a federal court also has jurisdiction under [28 U.S.C.] § 2251 to enter a stay of execution to make the defendant's § 3599 right effective." *Id.* at 475 (internal citation and quotation omitted). The Fifth Circuit entered the stay to allow "newly appointed counsel [ ] time to develop his *Ford* claim" and so, "to make Battaglia's right to counsel meaningful." *Id.*[12]

### B.    A stay is necessary to vindicate White's right to counsel under Section 3599.

*McFarland* and § 2251(a)(3) provide authority to stay the execution. Under either authority, "a stay of execution is imperative to ensure the effective presentation of [White's] application for authority to file his *Atkins* claim." *Hearn*, 376 F.3d at

---

[12] *Battaglia* alternatively explained why the district court had erred in its stay analysis, which it had conducted under the standard of *Nken v. Holder*, 556 U.S. 418 (2009), which applies to stays pending resolution of claims for relief. The Court concluded that Battaglia deserved a stay even under the *Nken* standard—as modified. Rewriting the traditional first factor (likelihood of success on the merits), *Battaglia* stated that "[a] declaration that the claim is unlikely to succeed is premature." As to the other factors, the equities "weigh heavily in [Battaglia's] favor," and the fact "his filings are late in arriving" was not due "to dilatory conduct on Battaglia's part." *Id.* at 475-76.

458. Absent a stay, White will not receive the meaningful assistance of counsel to which he is entitled. *See McFarland*, 512 U.S. at 858.

Practical considerations of representation only underscore the need for a stay. The limited time before White's execution date is plainly inadequate to raise a competent application for relief.[13]

New counsel must start their work with many basic tasks, such as collecting records, including current counsel's files, as well as those of other members of the defense team (e.g., psychologists, forensic specialists, and investigators). Only after gathering and reviewing these records, speaking with the client, and conducting necessary investigations will counsel truly know the strength of the intellectual disability claim and the availability of other claims for relief.

There are also numerous tasks specific to the development of a claim of intellectual disability. Counsel must find qualified experts who can consult with the defense team or evaluate the client. It also often requires the collection and review of voluminous mental health, educational, and social history records. As the 2003 ABA Guidelines for Capital Counsel summarizes, "Creating a competent and reliable mental health evaluation consistent with prevailing standards of practice is a time-con-

---

[13] By allowing district courts to impose a stay for a 90-day period from the date of appointment, Congress appears to have balanced the need for swift action with the time it takes to competently prepare an application for relief. *See* 28 U.S.C. § 2251(a)(3).

suming and expensive process." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 4.1, comment, reprinted in 31 Hofstra L. Rev. 913, 956 (2003).

Furthermore, the law concerning subsequent litigation of intellectual disability claims is complex. The law and science of intellectual disability itself is complex and evolving. Moreover, as outlined above, White has already identified a substantial unpresented claim that is not "'indisputably' barred by procedural rules" nor a "wholly futile enterprise." *Battaglia*, 824 F.3d at 474 (internal citations omitted). Yet, these arguments require time to investigate and prepare before being ripe for judicial review. Counsel must carefully examine caselaw on, among other topics, the exception to the federal second-or-successive petition bar, 28 U.S.C. § 2244(b)(2)(A); equitable tolling and the statute of limitations, 28 U.S.C. § 2244(d); the availability of relief under either or both Article 11.071, § 5(a)(1) or (3), should the CCA dismiss White's pending application.

It is important, too, that White bears no fault for these circumstances. White did not know about the reasons that his appointed federal habeas counsel might harbor a disabling conflict of interest in raising an intellectual disability claim in federal court on his behalf, *see* White Decl. ¶ 7, nor should he be expected to know that. It would be a cruel irony to expect otherwise.

Finally, since learning of White's predicament, conflict-free counsel have acted swiftly to seek a stay. *See* Part I.C above. This, too, weighs strongly in favor of granting the time-limited stay that § 2251(a)(3) permits.

## CONCLUSION

For the reasons stated above, White requests that this Court order the substitution of counsel under 18 U.S.C. § 3599 and enter an order staying his execution under *McFarland* and § 2251(a)(3).

Respectfully submitted,

MAUREEN FRANCO
Federal Public Defender
for the Western District of Texas

/s/ Tivon Schardl
TIVON SCHARDL
Chief, Capital Habeas Unit
Texas Bar No. 24127495
Fed. Bar No. 3145499
*Attorney-in-Charge*

JOSHUA FREIMAN
DONNA COLTHARP
Assistant Federal Public Defenders
919 Congress Ave., Ste. 950
Austin, Texas 78701
512-499-1584 (fax)
737-207-3007 (tel.)
Tivon_Schardl@fd.org

## APPENDIX: SUPPLEMENTAL HABEAS RULE 1 STATEMENT

Pursuant to the Southern District of Texas's Supplemental Habeas Rule 1, White supplies the following litigation history: a description of relief sought in any United States Court and the reasons for denying relief given by all courts that have considered White's claims. White has provided an explanation why issues urged in his motion have not been raised or exhausted in state court in the body of the Motion for Substitution of Counsel & Motion for a Stay of Execution.

## RELIEF SOUGHT IN FEDERAL COURT, AND REASONS FOR DENIAL.

- Original Petition for Habeas Corpus, May 3, 2001, ECF No. 1.
    - Dismissed at White's request, Dec. 31, 2001, ECF No. 22.

- Original Petition for Habeas Corpus, May 3, 2002, ECF No. 27
    - First Amended Petition for Habeas Corpus, Dec. 31, 2009, ECF No. 64.
    - Respondent's Motion for Summary Judgment Granted, Certificate of Appealability denied, Sept. 30, 2011, ECF No. 81. Reasons: White's actual innocence claims were not cognizable in federal court; Texas's future dangerousness inquiry does not violate the Sixth Amendment; Texas's mitigation instruction does not shift the burden of proof or violate the *Ex Post Facto* clause; Texas's special issues do not violate the Eighth Amendment; White's conviction and sentence were not the result of intentional discrimination based on race; White's clemency proceedings were not infected by racial discrimination; White' jury was not selection in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986),  or *Witherspoon v. Illinois,* 391 U.S. 510 (1968); White's confession was not taken in violation of the Sixth Amendment; White's argument regarding evidence admission was a question of state law.
    - United States Court of Appeals for the Fifth Circuit denied certificate of appealability. *White v. Thaler*, 522 F. App'x 226, 227-28 (5th Cir. 2013), *as revised* (Apr. 3, 2013), *cert. denied sub nom. White v. Stephens*, 571 U.S. 1133 (Jan. 13, 2014).
    - Petition for Certiorari denied, Jan. 13, 2015, ECF No. 98.

- Motion to Authorize Successive Petition for Habeas Corpus, United States Court of Appeals, Jan. 15, 2015.
    - Denied, *In re White*, No. 15-20022, Dkt. No. 19, Feb. 20, 2015.

28

- o   Reason: The Court concluded that White was not relying on any
  "new rule of constitutional law" for his claim that the introduction
  of White's confession violated the Sixth and Fourteenth Amend-
  ments and thus failed to make a prima facie showing that his appli-
  cation satisfies the requirements of § 2244(b)(2)(A).

## RELIEF SOUGHT IN STATE COURT, AND REASONS FOR DENIAL.

## DIRECT APPEAL

- Appeal to Texas Court of Criminal Appeals (CCA), *White v. State*, No. AP-
  72,580 (Tex. Crim. App. June 17, 1998).
  - o   Affirmed. Reasons: Admission of White's custodial statement did not
    violate the Fifth or Sixth Amendment or Art. I, § 10 of the Texas
    Constitution; White's jury was not selected in violates of *Batson*, 476
    U.S. 79; the trial court did not err in granting the State's challenges
    for cause to three prospective jurors.

## STATE HABEAS

- Initial application for a writ of habeas corpus, Nov. 16, 1998, Cause No.
  723847-A,  *Ex parte White*, No. WR-48,152-01 (Tex. Crim. App. docketed Dec.
  21, 2000).
  - o   Denied, Feb. 21, 2001, *Ex parte White*, No. WR-48,152-01 (Tex. Crim.
    App. Feb. 21, 2001). Reason: affirmed without opinion.

- Second application for a writ of habeas corpus, Jan.11, 2002, Cause No.
  723847-B, *Ex parte White*, No. WR-48,152-02 (Tex. Crim. App. docketed Mar.
  18, 2002).
  - o   Denied as abuse of the writ, Apr. 24, 2002, *Ex parte White*, No. WR-
    48,152-02 (Tex. Crim. App. Apr. 24, 2002).

- Third and fourth applications for a writ of habeas corpus, June 30, 2007, and
  Jan. 28, 2009, Cause Nos. 723847-C and 723847-D, *Ex parte White*, Nos. WR-
  48,152-03, WR-48,152-04 (Tex. Crim. App. docketed Mar. 11, 2009).
  - o   Denied as abuses of the writ, May 6, 2009. *See Ex parte White*, Nos.
    WR-48,152-03, WR-48,152-04, 2009 WL 1272551 (Tex. Crim. App.
    May 6, 2009) (per curiam).

- Writ of prohibition, Jan. 8, 2015, and motion for stay of execution and for ap-
  pointment of new state habeas counsel on January 13, 2015.
  - o   Denied without opinion, Jan. 15, 2015. *See Ex parte White*, No. WR-
    48,152-05 (Tex. Crim. App. Jan 15, 2015).

29

- Motion for leave to file writ of habeas corpus or, in the alternative, petition for writ of prohibition, and motion for stay of execution, Jan. 8, 2015.
  - o Leave to file writ denied without opinion, Jan. 15, 2015, *Ex parte White*, No. WR-48,152-06 (Tex. Crim. App. Jan. 15, 2015).

- Second motion for leave to file an application for writ of prohibition, Jan. 19, 2015.
  - o Leave to file writ denied without opinion, Jan. 21, 2015, *Ex parte White*, No. WR-48,152-07 (Tex. Crim. App. Jan. 21, 2015).

- Fifth application for writ of habeas corpus, Jan. 20, 2015, Cause No. 723847-E,  Subsequent Writ of Habeas Corpus, *Ex parte White*, No. WR-48,152-08 (Tex. Crim. App. docketed Jan. 22, 2015).
  - o Execution stayed pending further order, *Ex parte White,* No. WR-48,152-08, 2015 WL 375733 (Tex. Crim. App. Jan. 27, 2015).
  - o Dismissed, Nov. 2, 2016, *Ex Parte White,* 506 S.W.3d 39, 52 (Tex. Crim. App. 2016). Reason: Tex. Code Crim. Proc. arts. 11.071 § 5, 11.073 do not authorize successive petitions based on new scientific evidence of mitigation relevant to punishment.

## PENDING

- Sixth application for writ of habeas corpus, Aug. 23, 2024, Cause No. 723847-F,  Subsequent Application for Writ of Habeas Corpus, *Ex parte White*, No. WR-48,152-09 (Tex. Crim. App. docketed Aug. 29, 2024).

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(D), counsel for Petitioner has conferred with Jay Clendenin, counsel for Respondent, who is authorized to represent that Respondent opposes the relief sought in this Motion.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of September 2024, I electronically filed the foregoing Emergency Opposed Motion for Substitution of Counsel and Motion for Stay of Execution with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to the following:

Jay Clendenin
Office of the Attorney General of Texas
300 W 15th St., 8th Floor
Austin, TX 78701
512-936-1400
Email: jay.clendenin@oag.texas.gov

/s/ Tivon Schardl
Tivon Schardl